The next case, number 25-1210, Dante A. DeFronzo v. City of Somerville et al. At this time, would counsel to the appellants please introduce themselves on the record to begin. Good morning. May it please the court, my name is Leonard Kesson, not Michael Leonard, and I represent the City of Somerville, former Mayor Joseph Curtatone, former Police Chief David Fallon, and former Police Captain Bernard Cotter. If I may, I'd ask to reserve three minutes for rebuttal. You may. Can you get the microphone a little closer please? Okay, let's go ahead. Thank you. The strength of our country is that everybody is entitled to a fair trial, everybody gets a fair trial, should get a fair trial. That did not happen in this situation. My clients did not get a fair trial because they were blindsided by theories and evidence that had been deemed excluded in the past. The judges earlier the year before at summary judgment had said he's not going to consider anything that happened after the complaint was filed because the plaintiff didn't amend. And we waited for an amendment, we were surprised it didn't, so as we headed to trial they'd still did not amend. Okay, but here there's no amendment clearly, but the evidence that's presented is presented for purpose of the context, am I correct? The judge did a Rule 403 analysis. For context? Yes. Are you referring to the arbitrator's opinion? The arbitrator's opinion and the, frankly, allowing the plaintiff to recover damages Do you agree, legally, do you agree that if it's a continuing violation of retaliation that started in 2018 and continued forward that there's no requirement to amend as other acts of retaliation that all spring from the same retaliatory motive, do you agree that they don't have to amend if that's the situation? Conceptually. Conceptually. What you have here, though, you have elections, you have different people, and we had, when we went to summary judgment Well, let's focus on the elections. I think that's important. Let me just focus on that. So, as I understand what happened, after the arbitrator ordered reinstatement, your client, the mayor, still the mayor at that time, there's a decision made while he's still the mayor to put the plaintiff on some kind of administrative leave, correct? Yes. For purposes of appealing the arbitration. Okay. And then time goes by, there's a new mayor, and the plaintiff is either placed on paid leave while there's disciplinary proceedings, right? The new mayor decides that they will begin the disciplinary proceedings because of the Brady letter. But the second Brady letter occurs while your client's still the mayor, correct? Correct. But he doesn't take action on it. Your position is the evidence will show there's no evidence he took any action whatsoever? On the Brady letter. Oh, correct. That is, well, frankly, there is no evidence because there was no testimony. I thought your client, I thought the mayor said, no, I didn't bring him back after the Arbitrator's Award because of this, there's just absolutely nothing. No. The evidence is, did you put him on leave after the Arbitrator's Award? Yes. And it ends. Because I know the law. If I had delved into it, I know that there's criticism from the other side that we should have presented more evidence about this. I understood. If we get into this, then I'll have waived it. But the evidence was that he did not reinstate him. For the purposes of appealing the arbitration. Yes. Different decision. And then there's time. But, of course, that's not in evidence, but, yes, then this was in June, then... Well, what's in evidence? It seems like what's in evidence is, did you reinstate him after the Arbitrator's Award? No. No, I did not. Correct. That's it. That's the evidence. That's it. And the rest of the trial established that your client had a retaliatory motive dating back to 2018 for this person. That is what the jury found. Okay. And so can't the jury conclude that decision, too, was bound up with the prior retaliatory motive? Let's say they do. That would be six months. Okay. But they heard no evidence. Okay. Then it's six months. Then there's the new mayor. Yes. And your point is, well, it had to be the new mayor then, but it seems to me that that's sort of a jury question. Did the new mayor, was the new mayor influenced by what the old mayor did? Did the new mayor start from scratch? Isn't that for a jury to decide? It would be if there was evidence. There is no evidence as to, sorry, as to what happened. Who decided what? What were the factors? There is none, because the case was cut off at the mayor, Kurt Atone, testifying that, yes, after the arbitration, I put him on leave. There was nothing more after that. There's nothing more as to why did you put him on leave? What happened then? Why did he stay on leave? What about the letter?   And frankly, I think- So it's not a legal problem. It's a factual problem in your view. Yes. There's just absolutely no evidence from which a reasonable jury could have found that the post-arbitration award conduct was retaliatory. Exactly. If that was the case, if they brought that case, and the only evidence they put on is that Mayor Kurt Atone put him on leave. But it's not a pleading problem. It's a proof problem in your mind. Well, the proof results from the lack of pleading. Yes, but on the second part of this, it's proof. On the part of where they were, he was awarded $500,000 for conduct after the arbitration. And the proof that Mayor Kurt Atone did it was simply Mayor Kurt Atone saying that after the arbitrator's decision came in, did you put him on leave? Yes. And that's insufficient. Totally. Yes. Can I ask you just a slightly different question? So I was looking at the arguments you presented in your brief, and it seems that the first argument is really a due process argument. Is that right? You're saying that your client's due process rights were violated. I'm just trying to understand, what standard would you have us use to figure out if what happened here is a due process violation versus just an evidentiary error? You think there is evidence introduced that the district court shouldn't have allowed to come in. How should we do the analysis to determine if that amounts just to normal abuse of discretion analysis that we have to do versus what you're making is actually a constitutional claim? So how should we distinguish between these arguments and do the due process analysis? It's a two-part case, right? We have the issue of the arbitration decision coming in and we say poisoning the first part. And secondly, we have the fact that the due process problem that Mayor Kurt Atone was never on notice that there was going to be any claims against him after the arbitration. There was no notice, there was no discovery, we had no idea. The judge, remember the district court judge, by the way I think he's a terrific judge, the district court judge said in the summary judgment a year before the trial, he's not considering any evidence after the filing of the complaint because the complaint was not amended. It's not part of the case. That's what he said. That's the way we operate. That's the way we defended our clients with the understanding that anything that happened Is that on the record that he said that? Is there anywhere on the record here? Yes, sir. It's in a footnote in his decision. I can't give you the page off the top of my head but in his summary judgment decision, it's a footnote. Because we argued all that. I mean, we watched this coming in. I call these cases living cases. When you have an employment case, the person is still employed and things keep happening. So this was a living case. And the judge said, Judge Saylor said, I am not going to consider any evidence after the filing of the complaint. Did summary judgment happen after the discovery was over in the case? Yeah. As always. Right. Doesn't have to be. Yes. That's what you did. So summary judgment's over. Judge Saylor says, I can deny summary judgment without relying on this other evidence. But you did discovery. And then at some point, the other side must say, we have a continuing violation theory of retaliation. I mean, at some point that comes into focus. How are you, what are you deprived of? You did the discovery. Not about what happened after. I mean, you said conceptually that they don't need to amend if it's a continuing violation of retaliation. If we know that that's what the claim is. They need, the other side has to tell you. It's not a splitting, but they have to tell you what is your claim. There's no continuing violation claim. There was no claim about anything. If you review the record, what happened at the beginning of this case was everybody was sort of thunderstruck because they had put the new mayor, Mayor Ballantyne, on the witness list. We filed a motion saying you can't because you can't get into things that happened under her. They said, you're right, we're not going to call it. So that, you'll see that was denied as moot. So we're heading into trial. We're all understanding this is what the trial is going to be. And then people start ruminating on the other side. Well, how do we explain what happened to him since? And that's how this thing grew from what happened to him since. There was no continuing violation claim, not in the complaint, not anywhere. This is a novel thought by the other side. At the time that this happened, we understood from the judge's rulings, from everything in the record, that we were trying a case that ends on March 26th, the day of the complaint, those events, nothing else. And suddenly, because it was, well, how are we going to explain, what's he going to testify to as to what's happened to him since? This other stuff starts leaking in. There was no claim for continuing violation. There was no discovery for continuing violation. Isn't that evidence going, for purpose of the context, as I said originally, because the jury needs to know, you just can't try a case in a vacuum. They need to know what's been going on. I get the problem. I understood the problem. By the way, not caused by us. They didn't amend. The judge invited an amendment in the summary judgment decision. They didn't amend. So I understood the issue of what you do, but you see, now here we are. Now suddenly it's become a continuing violation. All this stuff flowed out of it. Suddenly all this stuff from the arbitrator's decision is getting into evidence. Counsel, can I, just to go back, because we have lots of, we hear lots of cases where people object to evidence that was admitted, but very few cases where somebody makes a claim that there's actually a constitutional due process violation because of that. So I'm just wondering if you can give me a little bit of help of when does admission of evidence that one side says shouldn't have come in rise to the level of being a constitutional due process violation versus an evidentiary error? What are the factors you suggest that we should look at? I would say the constitutional violation comes from the lack of notice. The issue here is the lack of notice that this stuff was coming in or that this stuff was relevant or that this stuff was going to be presented. That's the issue. It's not a simple evidentiary error. You have a case that's beginning trial with the understanding and the court's rulings which indicate that the facts end two months before the arbitration decision. You don't find out smack in the middle of trial that this evidence is going in. You find out when the case is going to trial, correct, when there's a pre-trial order. That's when you find out this will come in, correct? Oh, not necessarily. You're talking about evidence. Yeah. But in terms of what the dispute is, you find out all along. That's what we do discovery. We have a complaint. We do discovery. And then we know what the dispute is, which we did. We file the most for summary judgment, tell the judge that this is the dispute and the dispute ends on the day that the complaint was filed, not what happened afterwards. He agrees. And if I listen to the discovery, did you explore what happened after? Was that something that was explored through their depositions, your depositions? I'm trying to remember, barely. Your answer is barely? We knew what happened afterwards. They knew what happened afterwards. We all knew. Well, you would ask people about it in a deposition and put them on the record, I would think. They never deposed Mayor Valentine. When your clients were deposed, I would assume? Yes. And were they asked, was Mayor, your client, Mayor Curtone, asked about what happened after the arbitration award? Barely, as I recall. But you see, he was gone. See, what happens here is they've recovered $500,000 for actions by others. Fallon and Cotter were retired. But didn't the district court give an instruction about that they had to consider very carefully who they could give damages against? I thought the district court addressed that issue and made sure they weren't awarding damages against people who weren't involved. Correct. He said Cotter and Fallon. No, I agree with you. However, Curtone was never on notice that what happened after the complaint was filed was going to be at issue. Never. Until well into the trial. I mean, Judge Saylor did his best trying to figure out how to handle this problem. But... Well, to go back to your theory, he didn't. I mean, your theory is he didn't do his best because, really, he should have excluded it because he said he was going to exclude it before. I mean, that's the gravamen of your complaint, isn't it? I was being nice. Right. I understand. But the thing you keep... To the extent there's a due process cast to this, I feel like it's bound up in, all right, it wasn't in the complaint. The district court's summary judgment order gave us a particular sense that we don't have to deal with this. And then in the middle of the trial, it is presented to us and we are disadvantaged in a constitutionally significant way because of that confluence of factors. Exactly. Exactly. I mean, it wasn't just a hint as the case went to trial. It was in the footnote. We argued at summary judgment. You cannot consider anything after the complaint. Why are you arguing that? If it's not even in anyone's mind, why are you arguing that? Because I knew they were trying to introduce some of those things. It wasn't even an argument. We told the judge he agreed. It wasn't contested. It wasn't an issue. Trust me, nobody thought as this trial began that there was going to be evidence about what happened afterwards. They withdrew their ask to call Mayor Ballantyne as a witness because they weren't going to get into what happened. And she was the one. So you say about discovery, they didn't depose her. We had no idea. When she appeared on the witness list. But they don't have to depose her. I agree. When she appeared on the witness list is when my hackles went up and said, wait a minute, we're not getting into that. We filed a motion limiting and they said we're not going to get into that. So we're not going to call her. So the motions moved. And then suddenly, based on the only testimonies that could have put him on leave in July. Based on that, the judge, and you know, and if you look the way he did the verdict slip, he was speaking to you all already in the verdict slip saying if I separate the damages, the appeals court can deal with it. It's so unfair. This is what we do. People, you get notice pleadings. You do discovery. You do depositions. And you know what the issues are. What the claims are. And here that didn't happen. There was no continuing violation claim. There was not a hint that any of this was going to happen. And suddenly we're dealing with the arbitrator's decision coming in and the judge telling the jury they may align with the arbitrator. That's really bad. The arbitrator's decision has nothing to do with the claims in this case. The arbitrator's deciding whether it's just cause, not whether there's discrimination or whether there's retaliation. But they heard it. And we were totally unprepared for that. We were prepared for everything else. We were unprepared for that. Okay, counsel, you have a rebuttal. Let's hear from opposing counsel.  Counsel, for the appellee, please introduce yourself on the record to begin. Good morning, your honors. My name is Peter Brown. I represent the plaintiff appellee, Dante DeFranco, an appellate counsel, trial counsel with Timothy and Jared Burke. Your honors, Dante DeFranco pled, he litigated, and he proved to a jury that he was the subject of a years-long retaliation effort against him for speaking out against the Somerville Police Department and its former mayor, Mayor Curt Atone. In his complaint, he sought damages for the harm he sustained and continued to sustain. And we pointed out paragraph, I believe it was 131 of the complaint, as well as 130 and 127. That is the case he brought. That is the case he participated in. That's the case that he did full discovery with, with my brother. And that is the case that the jury heard and decided. Ultimately, the jury heard about my client's protected speech and his complaints. The jury heard about the city defendant's wrongful reactions to that speech and the complaints. And after hearing all of the evidence, resolving all of the conflicting versions of what happened, they held the appropriate defendants liable for the retaliatory conduct that those individuals engaged in. My client sought and received damages from the harm he suffered before the complaint was filed. That was $300,000. And for after the complaint was filed, that was the $500,000, all of which was tied to the initial and continuing retaliatory conduct of the city defendants. And in particular, Mayor Curtatone, there was no last minute switch of claims or no legal theories advanced, nothing at all like the Ruiz Rivera case relied on by my brother. There clearly was no unfair surprises or prejudice. And this case merely presented the standard clash of two very competing and contradictory versions of what happened and the reasons why. What's before you is simply an appeal of their belief that the jury got it wrong. And our differing views of what happened and the underlying nature of the case has continued on through the post-trial motions, as well as the appellate briefs, and you'll hear an argument today. My brother's arguments before you are simply not supported by the record. There's numerous statements in the brief that have no evidentiary support at all. I believe a helpful starting point or a framing point for us in trying to resolve those competing narratives and issues is Judge Saylor's decision denying the motion for new trial. First, Judge Saylor made easy work of the Rule 15 argument because this was not new claims nor new defenses. This was ongoing harm from the claim he initially pleaded. And Mayor Curtatone, in his testimony, which we put directly in our brief, provided the direct link of his 2021 decision and the protected conduct. That arbitration ruling came out. Mayor Curtatone ran to the press, just like he did in the beginning. The arbitration is rigged, and he decided he's not going to abide by the arbitration decision, and consistent with the retaliatory animus he showed throughout, he put him on administrative leave at that particular point. That was ample evidence upon which, with given everything else, the jury could have held Mayor Curtatone liable, did not hold anybody else liable. Mayor Ballantyne was not a named defendant in this case. The one who was held responsible for the $500,000 was Mayor Curtatone himself for the decisions he made, for the conduct he engaged in, and for the retaliatory- In your theory, Ballantyne would have potentially been an argument they could have made as it would break the proximate cause that Ballantyne ultimately made the real decision and that overwhelmed what Curtatone did, so you shouldn't assign blame to Curtatone? Is that your theory? That's exactly our theory. In this case, and what you're hearing is, my brothers made this argument and this conception that this case was somehow expressly tailored by the complaint. Nothing else is relevant. There was no continuing harm. Judge Saylor made a previous decision. Everybody agreed. That's not the case at all, and I refer the panel to the pretrial memorandum that that was a dispute. That was a litigation strategic bet that was made. They came to trial fully prepared to do one of two things. Number one, get to litigate the case that they wanted to litigate, cram everything in and exclude all of the other stuff. Two, they were expertly and ready and prepared to go in and deal with the fact that these other things come in. When I look at their appellate brief and I'm just seeing arguments about other people are liable or other people's decisions or the fact that there was an election, I'm looking for a legal doctrine or a principle that could be tethered to that argument to upset the  To answer your question, Your Honor, our theory is, yes, one of causation and superseding causation, that ultimately, if they couldn't go and were successful in framing the case they wanted to frame and unfairly limit the case, which they were unsuccessful in doing, it was then their burden to go and call Mayor Ballentine and put in affirmative evidence that Mayor Kurt Atone's liability for his conduct would have stopped because some superseding event occurred. They didn't put in any of that evidence. They didn't call Mayor Ballentine. They didn't talk about Mayor Ballentine. They didn't talk about any decision at all, and that was their call. They weren't precluded at all from doing that. And there's arguments made about structural errors in this case or constitutional defects, and they cited the Goldberg case. The Goldberg case was a case decided by Justice Marshall that dealt with administrative challenges for welfare benefits. No witnesses, no documents, no hearings. What do you say to the point that Judge Saylor, in his summary judgment order, indicated to the parties that the trial would be limited to a more narrow sphere of evidence? I don't think he indicated that at all. I think what Judge Saylor did is for purposes of the summary judgment and deciding what he needed to do, he was not considering post-complaint conduct for purposes of the motion. So I can understand how he can do that because he can deny summary judgment as long as there's enough evidence to get to a trial on the, I'll call it the 2018, the early evidence. Okay. When does it come to the fore that this case is actually going to be about that evidence and I'll call it the new evidence, which is the post-arbitration? When is that? Your Honor, I believe it was crystallized right from the start, but I can give Your Honor a helpful point along the way as well. Because from the beginning, they cited the continuing harm, the ongoing retaliatory conduct, and in paragraph 127 of the complaint, even referred to the false and erroneous and retaliatory testimony that was occurring in the arbitration hearings. At the time of the complaint, the second arbitration hearing, which my client prevailed on in part, was already underway. But I think a very helpful point of reference for Your Honor is the pretrial memorandum done I believe approximately a year before the trial. And the plaintiffs lay out exactly their case, all of everything that's going to come in, the defendants take exception to, they call it an advocacy piece that the plaintiff wrote, and they do two things. Number one, they make this bold argument about this case is limited and expressly tailored in time. And they write it right in their pretrial memorandum. The second thing they do, which I think is very helpful, is that they reference themselves the 2021 arbitration decision. And they say it for background to explain their very arguments and their very defense theories in this case. So this idea that it was ever separated or even could be logically separated is just incorrect from the get-go. And did discovery deal with all of it? Discovery dealt with all of it. And we cited to a particular, American Atonement was deposed, and we cited to an excerpt of Detective, no, Leader Chief Firmino, who was asked about post-complaint conduct and things of that nature. And the new mayor was deposed? The mayor was deposed as well. The new mayor, the... No, the new mayor was not deposed. Was not deposed. Because in our view, when Mayor Curt Atone made that... That's kind of risky for your side. She could have said... She, right? She could have said anything. She could have said anything. And she could have, and we would have had to deal with the fact of potentially going and those damages being cut off. We had what happened in July of 21, which, again, was a continuing harm of the same retaliatory conduct, the same retaliatory animus. Our position is that so long as our client sustains damages, that harm continues and that liability continues until one of two things happen. Number one, the harm stops. Or number two, there's some form of superseding event. And we didn't believe there was anyone that we had to be concerned about in that regard. And the defendants never pleaded it, and they never presented any evidence of it at all, even though they were absolutely entitled to and they weren't precluded in the least. So, counsel, just to make sure I understand how you're seeing what happened at the trial. So your view is, you file a complaint, you bring your claims, you say your damages from those claims are ongoing up to the date of the complaint. You sue the people that you think are responsible for those damages. And so it's your view that it was then up to the defendants to say, actually, your damages ended at XYZ date for these reasons. Including because maybe there was a superseding cause of a new mayor. And that was just up to them, and it had nothing to do really with you, and they decided not to put on that case. That's correct, because, and I go back to that strategic bet that they made. They wanted to go and limit the case and not get into any of these things. They had no basis to do that because we did not have a Rule 15 obligation. Discovery was fine, they were ready to go. And my brother essentially conceded it here. He says, I didn't want to go to bring in Mayor Ballentine's and others because I didn't want to waive that other argument. But the way you do that at defense to protect yourself if you think the jury might not buy it or the judge might not go fully with you, is you make that argument first. And then if you're unsuccessful and you feel you need to protect against a potential adverse monetary verdict, you go in and make that causation defense. They went all in on one, that strategic bet didn't pay off. And then number two, that the jury wasn't going to like Mr. DeFranco, was going to go and accept their arguments that this whole thing was conjured up and everything after he made errors in judgment and things. And they weren't going to go and award him anything. And that was the litigation strategy that was employed, and it was unsuccessful. That's certainly not cause for reversible error. Couple of things I'd like to point out from my brother's brief that I do think is important and also in the record. I want to talk about prejudice a little bit. This case had absolutely nothing to do with unfair surprise, being blindsided, and not being able to be prepared for trial. The pre-trial memorandum is on page 134 of the record appendix, and my brother's statements that I mentioned before are specifically on page 141, that makes specific reference to the 2021 arbitration decision. In the brief, as well as in the motion for new trial, they did not identify anything surprising or prejudicial at all, other than the fact that they didn't want to talk about these things at trial. The prejudice that they claimed, they just used the word prejudice. We don't hear in any word how. What witness couldn't they call? What evidence couldn't they put in? There is none of that. There's no how as to how they were prejudiced. They could have called Mayor Ballantyne, they elected not to do so. One of the key exchanges that occurred during the trial, it's in record appendix 682. This is before Dante DeFranzo testifies. That's a different question. What would have caused you to have to amend the complaint? If we were to advance a new theory of liability, which we did not do. So that's all about the motive? I mean, it's certainly a new act. You talk about continue to sustain damages. I mean, you can be fired way in the back. You remain fired, your damages keep going. But the act was way back here, and the damages keep going. That's one way to take the language, continue to sustain damages. This is, a new event happened. An arbitration decision that ordered reinstatement. And then the decision was made, we're not going to follow that. And I understand that springs from the same motive. Is that the entire analysis, because it springs from the same motive? You don't have to do anything about that? I do, because I think it springs from the same motive and the same course of conduct that was continuous all along. This wasn't any kind of, there really was no separation of the event from what happened earlier. And I think if we start cutting up civil litigation, just because there's an ongoing action that relates to the actual same claim, same theory of liability, same retaliatory. And so in litigation, what is the way we put the other side on notice of what's a new event? because it's not just the damages that keep accruing as the money is just rising because I don't have my job. How do we let the other side know this new event, arbitration, no reinstatement, that's going to be part of the case, what's the way that happens? Well, Your Honor, here, I think we don't necessarily have to go beyond damages, but I do want to answer your question. But here, that decision bore directly on his status and his damages. And that's what Judge Saylor focused on as to why the arbitration 2021 decision had to come in and the jury had to go and hear about it. I do think in this case, if we were to go and start thinking more about the specific conduct, I think we'd be looking at a standard where you'd have to say, is this really something different? Is it different in kind, is it different in substance, as opposed to just an additional act that is in furtherance of and wholly consistent with the nucleus of operative facts and the things that have gone and transpired. To me here, it would just be artificial. And I don't think a litigant would be on fair notice that they would have to go and supplement that. I think we'd be doing pleadings all of the time. It would be overwhelmingly burdensome. And that's what one of the decisions that we had cited to. Key cases that we just relied upon was the Ruiz case, which I thought is a great example of Rule 15. They were done and buried in a summary judgment decision. It was an ADA disability claim. And in the last minute, in a reply brief, they tried to totally shift theories all together, and they bring in an as regarded disability claim. And nobody had done a discovery about it, thought about it, wasn't tied in any way to the pleadings. And in our case, this is a perfect example of the real case that we had cited, which is trials can't happen in a vacuum. And just the fact that you were upset or disagree that the jury came out the way that they did is simply not cause for reversible error. We would ask that the judgment be affirmed. Thank you. Thank you. Three minutes rebuttal. Thank you. Please reintroduce yourself on the record to begin. My name is Leonard Keston. I'm here for the defendants. This suggestion of some strategic move is wholly without basis. When you read the record, when you read the pretrial motions, when Mayor Valentine appeared, and he's focusing on the arbitration. Let's focus on the $500,000 with no evidence. With no evidence. A decision made by Mayor Valentine, a new administration. And there was no notice whatsoever other than them putting her on the witness list. And we filed the motion. They took her off the witness list. There was never any notice. There was never any evidence. There was no trial about it. They didn't even try to go there. That the, he stayed out for three more years because of Kurtatone. The only evidence was Kurtatone saying that, and they keep saying he disregarded the arbitration. He has, we have, the city of Somerville has a right to appeal. They appealed the arbitration. That's why they left him on. And then the new mayor came in, and she started a termination process. And that's why he was out all those years, because of a second bravery letter. Because the DA, after seeing that arbitration decision, wrote another letter that said, we will never call this man because he basically almost killed somebody by withholding information. But those are the facts, and I'm not going to go there. What I'm going to go there is the unfairness, it's a second event. It's wholly separate and different by different people. They didn't introduce any evidence on it that said, well, Valentine conspired with Kurtatone. How could Kurtatone be liable for Valentine's actions? And yes, and he said, the burden's on me. No, the burden's on them to say that they're also complaining of- Well, it's easy, because Valentine adopted Kurtatone's prior decision and didn't decide to do anything about it. No. I mean, you could have called Valentine. We went into the case with that being excluded. It was never specifically put in till the end, when the judge put it on the verdict slip. If you look at the record, it was never put in until the judge put it on the verdict slip. And he said, I'm going to separate out the damages in case the appeals court thinks I'm wrong. Because we knew it was never part of the case. And I'm not going to start at trial winging some new defense, but it was never got that. They didn't even put in any evidence. If they'd started going that way with Kurtatone, if they had him on the stand and said, okay, you put him on leave, and then afterwards, when you left, what happened, and all this stuff, I would have objected, it would have been sustained. But then at least I knew, I would know, we would know that something's happening here about that, about Mayor Ballentine's actions. She didn't just do what Kurtatone did. Kurtatone appealed it and put him on leave pending the appeal. That was it. Mayor Ballentine decided that the new Brady letter, that he should be disciplined up to termination, and began the process. That's what resulted in all that time. It's separate. It was never raised, and when you review the record, you will see there was not a hint that there was some strategic decision. Judge Saylor was clear until the middle of that trial that nothing was going to be talked about that, and it's separate from the arbitration. I get the argument of the arbitration, same guy doing the same stuff, but the last three years, I mean, it was an outrage that the jury could hear the evidence is he put him on leave three years before, and from that, the jury can find that some other mayor did. Thank you, counsel. Thank you very much. I appreciate the time. I always like being here. Thank you. Thank you, counsel. That concludes argument in this case. Let's call the last case.